UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-----------------------------------------------------x

| | | |
|---|---|---|
| MARY VERDI-FLETCHER, | : | |
| an individual, | : | CASE NO.: |
| | : | |
| Plaintiff, | : | |
| | : | Judge: |
| vs. | : | |
| | : | |
| | : | Magistrate: |
| | : | |
| JACOBS INVESTMENTS, INC.; | : | |
| JACOBS ENTERTAINMENT, INC.; | : | |
| LIVE NATION ENTERTAINMENT, INC.; | : | |
| and NAUTICA ENTERTAINMENT, LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------x

## COMPLAINT

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

Plaintiff, MARY VERDI-FLETCHER, by and through her undersigned counsel, hereby files this Complaint and sues JACOBS INVESTMENTS, INC. (hereinafter "JACOBS INVESTMENTS"), JACOBS ENTERTAINMENT, INC. (hereinafter "JACOBS ENTERTAINMENT"), LIVE NATION ENTERTAINMENT, INC. (hereinafter "LIVE NATION"), and NAUTICA ENTERTAINMENT, LLC (hereinafter "NAUTICA") (collectively referred to as "DEFENDANTS") for declaratory and injunctive relief, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and for damages, including minimum statutory damages, and all other legal remedies which are available under the Ohio Civil Rights Commission, R.C. § 4112 *et seq.* and alleges:

1

**JURISDICTION AND PARTIES**

1.  This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.* (hereinafter referred to as the "ADA"). This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The Court is vested with supplemental jurisdiction over MS. VERDI-FLETCHER's state law claim pursuant to 28 U.S.C. § 1367 as this claim arises out of the same case or controversy as MS. VERDI-FLETCHER's federal claims.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

3.  Plaintiff, MARY VERDI-FLETCHER, (hereinafter referred to as "MS. VERDI-FLETCHER"), is a resident of Summit County, Ohio.

4.  MS. VERDI-FLETCHER is a qualified individual with a disability under the ADA. MS. VERDI-FLETCHER is afflicted with spina bifida.

5.  Due to her disability, MS. VERDI-FLETCHER is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MS. VERDI-FLETCHER is unable to walk, stand, or use her legs without assistance.

6.  Upon information and belief, JACOBS ENTERTAINMENT is a corporation incorporated in the State of Delaware and doing business in Cuyahoga County, Ohio.

7.  Upon information and belief, JACOBS INVESTMENTS is a corporation incorporated in the State of Delaware and doing business in Cuyahoga County, Ohio.

8.  Upon information and belief, LIVE NATION is a corporation incorporated in the State of Delaware and doing business in Cuyahoga County, Ohio.

2

9.      Upon information and belief, NAUTICA is a limited liability company organized in the State of Delaware and doing business in Cuyahoga County, Ohio.

10.     Upon information and belief, NAUTICA is the owner of the real properties and improvements that are the subject of this action, to wit: Jacobs Pavilion at the Nautica Entertainment Complex located at 2014 Sycamore Street, Cleveland, Ohio 44113. (hereinafter referred to as "the Property").

11.     Upon information and belief, JACOBS ENTERTAINMENT is the developer and/or operator of the Property.

12.     Upon information and belief, JACOBS INVESTMENTS is the parent company of JACOBS ENTERTAINMENT, and has control over the operations of the Property.

13.     Upon information and belief, LIVE NATION promoted the concert and controlled the concert logistics for the events on July 14, 2015, which form the basis of this suit.

14.     DEFENDANTS are jointly obligated to comply with the ADA.

15.     All events giving rise to this lawsuit occurred in the Northern District of Ohio, Cuyahoga County, Ohio.

## COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

16.     MS. VERDI-FLETCHER realleges and reavers Paragraphs 1 - 15 as if they were expressly restated herein.

17.     The Property is a place of public accommodation, subject to the ADA, generally located at: 2014 Sycamore Street, Cleveland, Ohio 44113.

18.  Upon information and belief, MS. VERDI-FLETCHER has visited the Property numerous times and desires to visit the Property again in the near future.

19.  MS. VERDI-FLETCHER's most recent visit to the Property prior to filing this original Complaint was on or about July 14, 2015 ("the Visit"). MS. VERDI-FLETCHER visited the Property to see a show there starring Julianne and Derek Hough called "Rock Concert for Dance." MS. VERDI-FLETCHER and her husband each paid approximately $80.00 for their respective tickets. MS. VERDI-FLETCHER specifically selected an accessible-designated seat.

20.  MS. VERDI-FLETCHER and her husband traveled to the Property for the show on July 14, 2015. Once there, they approached the accessible-designated parking spaces at the Property in their vehicle. An employee at the Property immediately confronted MS. VERDI-FLETCHER and her husband and began yelling that they could not park there. Furthermore, the parking spaces were blocked by trucks — including catering and performer trucks — to the extent that MS. VERDI-FLETCHER would not have been able to park her vehicle in any of the accessible-designated spaces even if the employee had permitted her to park there.

21.  As a result, MS. VERDI-FLETCHER and her husband were forced to park their vehicle in a non-accessible space in the VIP section. Upon information and belief, the VIP section does not contain any accessible-designated parking spaces. It was difficult for MS. VERDI-FLETCHER to disembark from her vehicle due to the lack of access aisles at the parking spaces in the VIP section. MS. VERDI-FLETCHER's husband had to remove MS. VERDI-FLETCHER from the vehicle and place her in the way of vehicular traffic due to the lack of access aisles in the VIP parking area.

22.    After parking, MS. VERDI-FLETCHER and her husband headed toward the accessible entrance near the blocked accessible-designated parking spaces. Once again, a Property employee began yelling at them and telling them that they could not enter in that location. The Property employee then called the police.

23.    When the police arrived at the scene, MS. VERDI-FLETCHER explained that she needed to enter at the accessible entrance due to her disability and that the accessible-designated parking spaces were blocked by trucks. MS. VERDI-FLETCHER was finally permitted to enter the Property for the show.

24.    MS. VERDI-FLETCHER entered the Property and was directed to her accessible-designated seat. However, MS. VERDI-FLETCHER's seat was stuck at the end of an aisle and passageway where she would be constantly be worried about being bumped or shoved by passers-by. The seat was also blocked by large speakers that completely obscured MS. VERDI-FLETCHER's view of the performers on the stage. Several empty box seats were empty and available, and MS. VERDI-FLETCHER had to negotiate with a Property employee in order to be moved to a different location.

25.    MS. VERDI-FLETCHER also experienced access problems at the Property's restrooms. The accessible-designated restrooms at the Property were merely small, mobile toilet stalls that did not have accessible-designated signage, were unclean, lacked sinks, and one of which had a broken lock. In contrast, the non-accessible restrooms were in large, spacious, clean trailers with sinks.

26.    During her Visit to the Property, MS. VERDI-FLETCHER experienced serious difficulty accessing the goods and utilizing the services offered at the Property due to the architectural barriers described herein.

5

27.   MS. VERDI-FLETCHER is presently deterred from visiting the Property due to the numerous ADA barriers which exist therein and are described in more detail in Paragraph 30.

28.   MS. VERDI-FLETCHER continues to desire to visit the Property, but continues to be deterred from visiting due to the barriers discussed below in Paragraph 30.

29.   MS. VERDI-FLETCHER intends to and will visit the Property to utilize the goods and services in the future once the barriers to access have been remedied, but MS. VERDI-FLETCHER presently fears that she will encounter the same barriers to access which are the subjects of this action.

30.   Upon information and belief, DEFENDANTS are in violation of 42 U.S.C. § 12181 *et seq.* and 28 C.F.R. § 36.302 *et seq.* and the Property is not accessible due to, but not limited to the following barriers which presently exist at the Property:

    I.      UPON INFORMATION AND BELIEF, THE FOLLOWING BARRIERS ARE ALLEGED TO BE THE RESPONSIBILITY OF DEFENDANTS:

        A.      The accessible-designated parking spaces at the Property do not have the required vertical signage or access aisles;

        B.      The VIP parking section at the Property does not have any accessible-designated parking spaces;

        C.      The accessible-designated entrance to the Property was obstructed by a Property employee;

        D.      The accessible-designated parking spaces at the Property were blocked by trucks—including catering and performer trucks—to the extent that MS. VERDI-FLETCHER was unable to park her vehicle

6

in any of the accessible-designated spaces;

E.    MS. VERDI-FLETCHER's accessible-designated seat at the Property was stuck at the end of an aisle and passageway, and the seat was blocked by large speakers that completely obscured MS. VERDI-FLETCHER's view of the performers on the stage;

F.    The two accessible restrooms at the Property did not have accessible-designated signage, were unclean, did not have sinks, and one restroom did not have a lock; in contrast, the non-accessible restrooms were in large, spacious, and clean trailers.

G.    Other current mobility-related barriers and violations of the Americans with Disabilities Act to be identified after a complete inspection of the Property.

31.    Title III of the ADA outlaws not just intentional discrimination but also certain practices that have a disparate impact upon persons with disabilities even in the absence of any conscious intent to discriminate. Thus, a public accommodation may not "utilize standards or criteria or methods of administration that have the *effect* of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." 28 CFR § 36.204 (emphasis added).

32.    Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a).

33.    By blocking the accessible-designated entrance to the Property and by obstructing

accessible-designated parking spaces with catering and performer trucks, DEFENDANTS preclude wheelchair users from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204, and 36.302(a).

34. MS. VERDI-FLETCHER continues to desire to visit the Property, but will continue to experience serious difficulty until the barriers discussed in Paragraph 30 are removed.

35. MS. VERDI-FLETCHER intends to and will visit the Property to utilize the goods and services in the future, but fears that the DEFENDANTS will continue to discriminate against her by failing to modify the barriers at the Property.

36. Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though removal is readily achievable.

37. Upon information and belief, removal of the discriminatory barriers to access located on the Property is readily achievable, reasonably feasible, and easily accomplished, and would not place an undue burden on DEFENDANTS.

38. Upon information and belief, removal of the barriers to access located on the Property would provide MS. VERDI-FLETCHER with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which are offered to the general public at the Property.

39. Independent of her intent to return as a patron to the Property, MS. VERDI-FLETCHER additionally intends to return as an ADA tester to determine whether the barriers to access stated herein have been remedied.

40. MS. VERDI-FLETCHER has been obligated to retain the undersigned counsel for the filing and prosecution of this action. MS. VERDI-FLETCHER is entitled to have her

reasonable attorneys' fees, costs, and expenses paid by DEFENDANTS, pursuant to 42 U.S.C. § 12205.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS COMMISSION, R.C. § 4112 *et seq.*

41.  MS. VERDI-FLETCHER realleges and reavers Paragraphs 1 - 40 as if they were expressly restated herein.

42.  As proprietors and/or operators of a place of public accommodation within the jurisdiction of the State of Ohio, DEFENDANTS are obligated to comply with the provisions of the Ohio Civil Rights Commission, R.C. § 4112 *et seq.*

43.  The conduct alleged herein violates The Ohio Civil Rights Commission, R.C. § 4112 *et seq.*

44.  Section 4112.02(G) of the Ohio Civil Rights Commission provides that it shall be an unlawful discriminatory practice "for any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of…disability…the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation."

45.  DEFENDANTS have violated R.C. § 4112.02(G) by subjecting MS. VERDI-FLETCHER as a person with a disability, to discrimination in violation of her civil rights.

46.  DEFENDANTS have further violated R.C. § 4112 et seq. by being in violation of the rights provided under the ADA.

47.  This has resulted in a cognizable injury to MS. VERDI-FLETCHER.

48.  MS. VERDI-FLETCHER has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

49.      MS. VERDI-FLETCHER prays for judgment pursuant to R.C. § 4112 *et seq.*, including minimum statutory damages, and all other relief allowed by law.

WHEREFORE, MS. VERDI-FLETCHER demands judgment against DEFENDANTS, and requests the relief:

A.      That this Court declare that the Property owned, leased, and/or operated by DEFENDANTS is in violation of the ADA;

B.      That this Court enter an Order directing DEFENDANTS to alter the Property to make it accessible to and useable by individuals with mobility-related disabilities to the full extent required by Title III of the ADA;

C.      That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MS. VERDI-FLETCHER;

D.      That this Court award monetary damages pursuant to R.C. § 4112 et seq. for the violation of MS. VERDI-FLETCHER's civil rights by DEFENDANTS; and

E.      That this Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

THE BIZER LAW FIRM
Attorney for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

THE ROBINSON LAW FIRM
Attorney for Plaintiff
Tamara Robinson (OH # 90798)
TRobinsonLawLLC@gmail.com
P.O. BOX 771253
Lakewood, OH 44107
T: 216-543-4025


By: /s/Andrew D. Bizer
    Andrew D. Bizer

11